# In the United States Court of Federal Claims

No. 15-673C
BID PROTEST
(Filed Under Seal: August 14, 2015 | Reissued: August 25, 2015)[*]

| | |
|---|---|
| IEI-CITYSIDE JV, ) | |
| ) | Post-Award Bid Protest; Small Business |
| Plaintiff, ) | Administration; Joint Venture Agreement; |
| ) | 13 C.F.R. § 124.513; 13 C.F.R. § |
| v. ) | 121.103(h)(3); Mentor/Protégé; |
| ) | Affiliation. |
| THE UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

*Kathryn V. Flood*, with whom were *Pamela J. Mazza* and *Megan C. Connor*, Of Counsel, PilieroMazza PLLC, Washington, DC, for plaintiff.

*Joshua Kurland*, Trial Attorney, with whom were Douglas K. Mickle, Assistant Director, Robert E. Kirschman, Jr., Director, Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, for defendant.

**OPINION AND ORDER**

**KAPLAN, Judge.**

Plaintiff, IEI-Cityside, is a joint venture comprised of Inspection Experts, Inc. and Cityside Management Corp. It filed this bid protest to challenge a decision by the Office of Hearings and Appeals of the Small Business Administration ("SBA") that IEI-Cityside is not a "small" business within the meaning of SBA regulations for purposes of a solicitation issued by the Department of Housing and Urban Development ("HUD") for property and preservation services for its single family Real-Estate Owned properties.

Currently before the Court are the parties' cross-motions for judgment on the administrative record. For the reasons discussed below, the plaintiff's motion for judgment on the administrative record is **DENIED** and the government's cross-motion is **GRANTED**.

---

[*] This Opinion was previously issued under seal on August 14, 2015, and the Clerk of the Court entered judgment on August 18, 2015. The parties were given the opportunity to propose redactions and indicated on August 24, 2015 that they did not have any suggested redactions to the Opinion and Order. Therefore, the Court reissues its decision without redactions.

**BACKGROUND**

I.     **Statutory Background**

In accordance with the Small Business Act, the Small Business Administration is charged with promulgating "detailed definitions or standards by which a business concern may be determined to be a small business concern for the purpose of this Chapter or any other Act." 15 U.S.C. § 632(a)(2)(A) (2012). Pursuant to this statutory authority, the SBA has issued regulations that "define whether a business entity is small and, thus, eligible for Government programs and preferences reserved for 'small business' concerns." 13 C.F.R. §§ 121.101(a). The SBA uses the North American Industry Classification System ("NAICS") to establish these size standards, which are generally based on either the number of employees or annual receipts of the business concern and its business affiliations. 13 C.F.R. §§ 121.101, 121.201.

With exceptions not relevant here, parties to a joint venture are ordinarily considered "affiliates" under SBA regulations, and will be jointly considered for the purposes of determining whether they meet the designated size standard for a procurement. 13 C.F.R. § 121.103(h)(3). There are, however, three exceptions to this rule. Id. Of particular relevance to this case, "[t]wo firms approved by the SBA to be a mentor and protégé under [13 C.F.R.] § 124.520 of these regulations may joint venture as a small business for any Federal government [contract], provided the protégé qualifies as small" and the joint venture agreement meets the requirements of 13 C.F.R. §§ 124.513(c) and (d). 13 C.F.R. § 121.103(h)(3)(iii).[2]

"The mentor/protégé program is designed to encourage approved mentors to provide various forms of business development assistance to protégé firms." 13 C.F.R. § 124.520(a). Its purpose "is to enhance the capabilities of the protégé, [to] assist the protégé with meeting the goals established in its SBA-approved business plan, and to improve its ability to successfully compete for contracts." Id.

Under SBA regulations, for contracts set aside for 8(a) participants, a joint venture must submit its agreement to the relevant SBA district office prior to contract award to confirm its compliance with the SBA regulations. "If the procurement is to be awarded other than through the 8(a) BD program (e.g., small business set aside, HUBZone set aside)" as in this case, the "SBA need not approve the joint venture prior to award, but if the size status of the joint venture is protested," the joint venture agreement "must meet the requirements of [13 C.F.R.] §§ 124.513(c) and (d) in order to receive the exception to affiliation authorized by [13 C.F.R. § 121.103(h)]." 13 C.F.R. § 121.103(h)(3)(iii).

Subsection (c) of 13 C.F.R. § 124.513 sets forth the provisions that must be included in every joint venture agreement to perform a contract awarded as a small business set aside. Among other things, and most pertinent to this case, the joint venture agreement must itemize all major equipment, facilities, and other resources to be furnished under the contract by each joint

---

[2] Protégés are participants in the SBA's 8(a) Business Development program ("BD") which is designed to "assist eligible small disadvantaged business concerns compete in the American economy through business development." 13 C.F.R. § 124.1.

venture partner, with a detailed schedule of its cost or value. 13 C.F.R. § 124.513(c)(6). In addition, pursuant to subsection (c)(7), the joint venture agreement must "specify[] the responsibilities of the parties with regard to negotiation of the contract, source of labor, and contract performance, including ways that the parties to the joint venture will ensure that the joint venture and the 8(a) partner(s) will meet the performance of work requirements set forth in paragraph (d)" of the regulation. 13 C.F.R. § 124.513(c)(7). Section (d), in turn, requires that the small business participant perform at least 40% of the work performed by the joint venture, and that this work consist of "more than administrative or ministerial functions so that [the small business] gain[s] substantive experience." 13 C.F.R. § 124.513(d).

## II.     Factual Background

### A.     The Solicitation

On May 22, 2014, the Department of Housing and Urban Development issued Request for Proposals No. DU204SA-13-R-0004 ("RFP"), for an indefinite delivery, indefinite quantity ("IDIQ") contract seeking field service manager ("FSM") services for HUD's single family Real-Estate Owned ("REO") properties. AR 1-172. The HUD contracting officer set aside the procurement partially for small businesses and assigned NAICS code 531311, Residential Property Managers, with a corresponding size standard of $7 million average annual receipts, meaning that businesses larger than the size standard would not be eligible to compete. AR 139-140. The RFP divided HUD's REO properties into eight geographic contract areas, seven of which were set aside for small businesses: 1P (Michigan); 3P (Connecticut, Maine, Massachusetts, Vermont, New Hampshire, New Jersey, New York, and Rhode Island); 4P (Ohio); 5P (Delaware, Maryland, Pennsylvania, Virginia, and West Virginia); 1D (Colorado, New Mexico, North Texas, and Utah); 4D (Iowa, Nebraska, South Dakota, and Wisconsin); and 5D (Minnesota, Montana, North Dakota, and Wyoming). AR 152-53. In turn, the contract areas are within larger regions administered by two of HUD's four regional Homeownership Centers ("HOC") located in Philadelphia, Pennsylvania and Denver, Colorado. AR 16.

The RFP explained that "HUD has a need to manage and sell a sizable inventory of single-family homes." AR 16. For each geographic region in which HUD sought to award a contract, HUD identified seven major functions to be performed by contractors: (1) Pre-Conveyance Activity; (2) Conveyance Activity; (3) Claim Review Activity; (4) Management Activity; (5) Marketing Activity; (6) Closing Activity; and (7) Oversight Monitoring. AR 17. HUD further specified the purposes and objectives for field service management contractors, including inspecting, securing, repairing, and maintaining the properties. AR 19. The RFP stated that HUD would award separate, single-award IDIQ contracts, each covering one or more geographic regions. AR 150.

### B.     The IEI-Cityside Joint Venture Agreement

Inspection Experts, Inc. ("IEI") is a participant in the SBA's 8(a) BD program and Mentor/Protégé program. Id. Cityside Management Corp. ("Cityside") is its SBA-approved mentor. Compl. ¶ 10. As a participant in the 8(a) program, IEI is assigned to the Nebraska District Office located in Omaha, Nebraska. Id. See 13 C.F.R. § 124.401.

3

On June 9, 2014, IEI and Cityside executed a joint venture agreement for IEI-Cityside ("the agreement"). AR 1312-19. The agreement stated that, in accordance with the Solicitation, "[t]he contractor shall perform inspections, preservation, maintenance, and property management services for HUD-Owned properties and reconveyances." AR 1314 § 1.0. It further specified that IEI-Cityside's responsibilities would include "[i]nitial inspections to confirm whether property meets conveyance conditions," "[p]reservation of property from conveyance to sale," "[m]aintenance and preparation of properties intended for sale," "[m]anagement of rental properties," and "[m]anagement and maintenance of properties in the custody of, but not owned by HUD." Id.

Section 2.0 of the agreement designated Shanthi Dabare, the President of IEI, as the managing director for IEI-Cityside. The agreement also contained the following provisions relevant to the issues raised in this case:

> 6.0    Equipment. Upon award of the contract identified in section 1.0 Purpose, above, the Managing Director will purchase, in the name of the joint venture, facilities and equipment for the proper operation of this contract.
>
> . . . .
>
> 9.0    Negotiating the Contract. Shanthi M. Dabare will be responsible for negotiating the original contract, should negotiations be required by HUD.
>
> . . . .
>
> 14.0    Specific Responsibilities. 8(a) IEI shall perform fifty percent (50%) of the total dollar amount of the labor portion of the project, which also consists of labor and management personnel staff. Cityside Management Corporation shall perform fifty percent (50%) of the total dollar amount of the labor and management personnel portion of the project.
>
> Pursuant to 13 CFR 124.513(d), IEI the 8(a) participant shall perform fifty percent (50%) of the work performed by the joint venture. Work is defined as labor portions of the project, beyond and not including subcontracted work, consisting of analytical, technical, and management personnel staff positions.
>
> Cityside Management Corporation, the mentor, shall perform fifty percent (50%) of the work performed by the joint venture. Work is defined as labor portions of the project, beyond and not including subcontracted work, consisting of analytical, technical, administrative or, if waived by the 8(a) participant; management personnel staff positions.
>
> If labor portions cannot be distributed as listed above due to labor allocations which do not support a 40/60 delineation of work IEI the 8(a) participant to the joint venture will have first right of refusal in the final selection of personnel staff positions. Selections shall be made which aid in their ability to gain knowledge

4

from performance of the contracts and assists in its business development and must consist of analytical, technical, or management personnel staff positions. The joint venture partners agree to maintain the 50/50 delineation of work as closely as the contract staff positions dictate. IEI will not subcontract more than 60% of the work to Cityside Management Corporation or any other subcontractor, if necessary IEI will hire employees from Cityside Management Corporation as part of this joint venture in order to meet the percentage of work split.

15.0   SBA must approve this joint venture prior to award of the FSM 3.8 contract on behalf of the joint venture.

AR 1315-18 §§ 6.0, 9.0, 14.0, 15.0 (grammatical and punctuation errors in the original).

On June 9, 2014, IEI-Cityside submitted the joint venture agreement to the Nebraska District Office for approval. Compl. ¶ 12. In addition to the agreement, IEI-Cityside also submitted a copy of a form provided by the district office titled "Supplemental Information Checklist." AR 1320-26. In that form, IEI-Cityside included more detailed information about the project, including the number and skills of employees supplied to the joint venture by each venture participant, a brief description of the hiring and employee management responsibilities of each venturer, and an explanation of how project management would be handled. AR 1325. In addition, IEI-Cityside included information on the breakdown of work tasks to be performed by each joint venturer and the ways that the small business partner (IEI) would meet the performance work requirements. AR 1326.[3]

### C.   Contract Award and Size Protests Before the SBA

On July 5, 2015, IEI-Cityside timely submitted its proposal in response to the Solicitation. Compl. ¶ 11. In the meantime, on August 13, 2014, the Nebraska District Office approved the joint venture agreement.[4] Mot. Prelim. Inj. 8-15, June 29, 2015, ECF No. 19 [hereinafter "Pl.'s Br."]. On September 30, 2014, the contracting officer selected IEI-Cityside for award of contract areas 1P, 4P, and 5P (all areas within the Philadelphia, Pennsylvania HOC region for which IEI-Cityside entities were incumbent contractors). AR 407, 531, 656.

---

[3] For example, IEI-Cityside stated that "IEI will be responsible for the functional oversight and management of the daily operations and contract supplying Key Personnel to meet these required functions." Id. In addition, "IEI will retain control of finance tracking and accounting functions as required by the [joint venture] Agreement. All other staff positions will be a mixed group of both IEI and Cityside staff to ensure that all functions and efficiencies are learned." Id.

[4] As described above, because the procurement was not to be awarded through the 8(a) BD program, the district office's prior approval was not required under the SBA regulations, and—given the size protests later filed by IEI-Cityside's competitors—was of no consequence. See 13 C.F.R. § 121.103(h)(3)(iii).

On October 3, 2014, MRAP, LLC d/b/a Market Ready Services, an unsuccessful offeror, filed a size protest against IEI-Cityside with the contracting officer. AR 791-97, 902-42. On October 6, 2014, A2Z Field Services and Atlas Field Services, two other unsuccessful offerors, also filed size protests against IEI-Cityside. AR 797.1-797.44, 836-900. The three protests were referred to SBA's Office of Government Contracting – Area II in King of Prussia, Pennsylvania (Area Office). AR 836, 860, 902.

On March 12, 2015, the Area Office issued Size Determination Nos. 2-2015-13/14/15, concluding that IEI and Cityside are affiliated for the procurement at issue, and that therefore IEI-Cityside did not qualify as a small business for the procurement. AR 1045-59. The Area Office noted that IEI and Cityside were parties to an SBA-approved mentor/protégé agreement, and that IEI-Cityside was competing for a procurement outside the 8(a) BD program. AR 1051. The Area Office explained that parties to a joint venture ordinarily are affiliated with each other with regard to the performance of such a contract (which normally prevents the joint venture from being eligible in a case like this one in which one of the joint venture partners is undeniably not small). AR 1051-52 (citing 13 C.F.R. § 121.103(h)(3)(iii)).

The Area Office found that IEI-Cityside did not qualify for the mentor-protégé exception because its joint venture agreement did not comply with 13 C.F.R. § 124.513(c) and (d). AR 1052. In particular, the Area Office determined that the agreement—which simply stated that "[u]pon award of the contract . . ., the Managing Director will purchase, in the name of the joint venture, facilities and equipment for the proper operation of this contract"—did not comply with the regulatory requirement that it include an itemization of all major equipment, facilities, and other resources to be furnished by each joint venture partner, with a detailed schedule of cost or value of each. AR 1053 (quoting 13 C.F.R. § 124.513(c)(6)). In that regard, it cited the decision of the SBA's Office of Hearings and Appeals ("OHA"), the agency's highest adjudicative authority, in Kisan-Pike, a Joint Venture, SBA No. SIZ-5618 (Nov. 24, 2014), 2014 WL 6904349 (2014). In Kisan-Pike, the SBA had ruled that a similarly broad statement lacked the specificity necessary to comply with section 124.513(c)(6). 2014 WL 6904349.

Further, the Area Office determined that the IEI-Cityside joint venture agreement did not specify IEI's and Cityside's respective responsibilities as required by section 124.513(c)(7). AR 1053. It observed that the joint venture agreement had simply provided that IEI's president would negotiate the contract, but otherwise was so ambiguous about the respective responsibilities of the parties that it was not clear from the agreement how IEI-Cityside would meet the work requirements set forth in section 124.513(d). AR 1053.

Citing the IEI-Cityside joint venture agreement's failure to meet the section 124.513(c) and (d) criteria, the Area Office concluded that IEI and Cityside (1) did not qualify for the section 121.103(h)(3)(iii) exception from affiliation; (2) were thus affiliated under section 121.103(h)(2); and therefore (3) did not constitute an eligible small business for the procurement. AR 1053-54. The Area Office also determined, based on an analysis of extensive financial information that IEI, Cityside, and the joint venture had provided, that IEI in any event did not qualify as small based on its receipts and proportionate share of various joint ventures. AR 1054-58.

Subsequently, on March 30, 2015, IEI-Cityside filed an appeal of the size determination with OHA. AR 4979-5015. OHA rendered a decision on June 16, 2015, sustaining the Area Office's size determination and concluding that the size determination did not contain a clear error of fact or law. AR 5064-77. OHA's decision focused on the issues concerning the alleged failure of IEI-Cityside's joint venture agreement to comply with 13 C.F.R. § 124.513(c) and (d) and did not reach the issue of whether IEI itself would qualify as a small business given its receipts and share in other joint ventures.

Specifically, OHA agreed with the Area Office that IEI-Cityside's representation that IEI's president "will, in the future, purchase facilities and equipment for [IEI-Cityside] does not suffice to meet the requirement that the agreement '[i]temiz[e] all major equipment, facilities, and other resources to be furnished by each party to the joint venture, with a detailed schedule of cost or value of each.'" AR 5075 (quoting 13 C.F.R. § 124.513(c)(6)). OHA further determined that "the statement that IEI and Cityside each will perform 50% of [the] total dollar value of the labor portion of the contract does not meet the requirement to '[s]pecify[] the responsibilities of the parties with regard to . . . contract performance, including ways that the parties to the joint venture will ensure that the joint venture and the 8(a) partner(s) to the joint venture will meet the performance of work requirements set forth in paragraph (d) of this section.'" AR 5075 (quoting 13 C.F.R. § 124.513(c)(7)). OHA elaborated that IEI-Cityside's joint venture agreement "does not designate specific tasks or responsibilities to IEI and Cityside, and fails to explain how [IEI-Cityside] will fulfill the performance of work requirements set out in 13 C.F.R. § 124.513(d)." AR 5075. Hence, it concluded that the IEI-Cityside joint venture agreement "contains highly general statements, but lacks the specificity required by 13 C.F.R. §§ 124.513(c) and (d)." AR 5075.

In addition, noting that the situation presented in this case was analogous to that at issue in Kisan-Pike, OHA rejected IEI-Cityside's claim that the nature of the contract in this case made it too difficult to provide the information required by the regulations. AR 5074-75. First, OHA explained, there is no exception to the regulatory requirements for "situations where a joint venture may have difficulty providing detailed information." AR 5075 (quoting Kisan-Pike, 2014 WL 6904349, at *9). Second, and in any event, OHA determined, the record did not support IEI-Cityside's contention that it was impossible for IEI-Cityside to have met those requirements because the RFP had described the types of work to be performed, and IEI-Cityside had summarized the types of work in its agreement. AR 5075. Thus, although IEI-Cityside would not have known which geographic regions or properties it would be managing at the time the agreement was signed it could have complied with § 124.513(c) and (d) "by discussing the types of work each joint venture partner would perform, and the resources each partner would contribute, for each region awarded to [IEI-Cityside]." AR 5075.

### D. This Bid Protest

IEI-Cityside filed a bid protest in this Court on June 29, 2015 to challenge the SBA's decision. It contends that the SBA's decision was arbitrary, capricious, and contrary to law, claiming that the joint venture agreement: (1) provided sufficient specificity with regard to the parties' contributions of major equipment, facilities, and other resources furnished by each; (2) was adequately specific as to the responsibilities of the parties with regard to negotiation of the

7

contract, source of labor, and contract performance; and (3) specified with certainty that IEI would be performing at least 40% of the joint venture's work. Pl.'s Br. 8-15. According to IEI-Cityside, given the IDIQ nature of the procurement, and the fact that IEI-Cityside did not know which geographic regions it would be awarded, it would have been impossible to provide any greater level of specificity in the agreement. Id. at 12.

To expedite a decision on the merits, and with the consent of the parties, the Court issued an order on July 2, 2015 that it would treat IEI-Cityside's motion for a preliminary injunction as a motion for judgment upon the administrative record. The government then filed its response to plaintiff's brief and its cross-motion for judgment on the administrative record. After additional responsive briefs were filed, oral argument on the parties' cross-motions was held on August 4, 2015.

## DISCUSSION

### I. Jurisdiction

The Court of Federal Claims has "jurisdiction to render judgment on an action by an interested party objecting to . . . a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1) (2012). A party is an "interested party" with standing to bring suit under 28 U.S.C. § 1491(b)(1) if the party "is an actual or prospective bidder whose direct economic interest would be affected by the award of the contract." Orion Tech., Inc. v. United States, 704 F.3d 1344, 1348 (Fed. Cir. 2013). An offeror has a direct economic interest if it suffered a competitive injury or prejudice. Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1370 (Fed. Cir. 2002) (holding that "prejudice (or injury) is a necessary element of standing").

In this case, IEI-Cityside objects to the SBA's determination that IEI and Cityside are affiliated, and that, therefore, IEI-Cityside does not qualify as a small business for the purposes of the HUD procurement. IEI-Cityside claims that the SBA violated its own regulations in rendering its size determination. Accordingly, this case involves an allegation that there has been a violation of a statute or regulation in connection with a procurement within the meaning of 28 U.S.C. § 1491(b)(1). See Palladian Partners, Inc. v. United States, 783 F.3d 1243, 1254 (Fed. Cir. 2015) (recognizing CFC's jurisdiction over challenges to OHA's NAICS determination in connection with a procurement).

Further, IEI-Cityside is clearly an interested party. It is an actual bidder whose direct economic interest has been affected by the SBA's decision. IEI-Cityside was awarded HUD contracts for three of the areas for which it submitted offers. As a result of the SBA's decision, however, IEI-Cityside has been excluded from the competition. It has therefore suffered competitive injury or prejudice for purposes of establishing its standing under 28 U.S.C. § 1491(b)(1).

## II.  Motion for Judgment on the Administrative Record

### A.  Standard for Granting Judgment on the Administrative Record

Pursuant to RCFC 52.1, the court reviews an agency's procurement decision based on the administrative record. Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1379 (Fed. Cir. 2009). Thus, to resolve a motion for judgment on the administrate record, the court conducts an expedited trial on the paper record, making fact findings where necessary. Bannum, Inc. v. United States, 404 F.3d 1346, 1354 (Fed. Cir. 2005). The court's inquiry is "whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." A&D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126, 131 (2006) (citing Bannum, Inc., 404 F.3d at 1356). Unlike a summary judgment proceeding, genuine issues of material fact will not foreclose judgment on the administrative record. Bannum, Inc., 404 F.3d at 1356.

### B.  Standard of Review in Bid Protest Cases

The standard of review used to evaluate agency decisions in bid protest cases is the same as the standard used to evaluate agency action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706 (2012). See 28 U.S.C. § 1491(b)(4) (stating that "[i]n any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5"). To successfully challenge an agency's procurement decision, a plaintiff must show that the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); Bannum, Inc., 404 F.3d at 1351. "The arbitrary and capricious standard applicable here is highly deferential. This standard requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors." Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed. Cir. 2000) (citing Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974)).

In this case, the agency decision under review is that of the SBA, speaking through its Office of Hearings and Appeals. See 13 C.F.R. § 134.316(d) (decision of the OHA is the final decision of the SBA). Further, the issue under review involves the SBA's interpretation and application of its own regulations, which it promulgated pursuant to statutory authority. IEI-Cityside's burden to secure reversal of the OHA's determination is therefore a particularly difficult one, as an agency's interpretation of its own regulations is "controlling unless 'plainly erroneous or inconsistent with the regulation.'" Auer v. Robbins, 519 U.S. 452, 461 (1997) (citing Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 359 (1989) (quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945))). For the reasons set forth below, the Court concludes that IEI-Cityside has failed to meet that burden or otherwise show that the agency's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

### C.  Application of the Legal Standards

The SBA concluded that the joint venture agreement between IEI and Cityside did not meet the requirements of 13 C.F.R. § 124.513 (c)(6), (c)(7) or (d) and that therefore the joint venture did not qualify for the exception to affiliation set forth in 13 C.F.R. § 121.103(h)(3)(iii).

9

See also 13 C.F.R. § 124.520(d)(1)(ii) ("In order to receive the exclusion from affiliation for both 8(a) and non-8(a) procurements, the joint venture must meet the requirements set forth in § 124.513(c)."). This conclusion—which concerns matters that are squarely within the scope of the SBA's discretion and expertise—was plainly reasonable and consistent with the regulations.

Section 124.513(c)(6) required that IEI-Cityside's joint venture agreement contain a provision "[i]temizing all major equipment, facilities, and other resources to be furnished by each party to the joint venture, with a detailed schedule of cost or value of each." With respect to this requirement, IEI's joint venture agreement stated that "[u]pon award of the contract identified in section 1.0 Purpose, above, the Managing Director will purchase, in the name of the joint venture, facilities and equipment for the proper operation of this contract." AR 1315. According to plaintiff, this clause satisfied the criterion set forth in 13 C.F.R. § 124.513 (c)(6) by providing that "all equipment and resources essentially would be contributed or 'furnished' by IEI, the Managing Director." Pl.'s Br. 10.

This contention is not persuasive. First, the joint venture agreement does not state that IEI will furnish all equipment, facilities and resources; instead, it states that IEI, as managing director, will purchase such materials "in the name of the joint venture." But more importantly, even assuming it were reasonable to read the agreement to mean that IEI would be supplying all equipment, facilities, and resources, IEI-Cityside does not deny that the agreement did not include the other information required by the regulation: an itemization and detailed schedule of the costs of such equipment, facilities, and resources. Accordingly, OHA's determination that IEI-Cityside's agreement did not meet the requirements of 13 C.F.R. § 124.513(c)(6) is clearly reasonable.

Similarly, the OHA's conclusion that IEI Cityside's joint venture agreement did not comply with 13 C.F.R. § 124.513(c)(7) was also entirely reasonable. That regulation required that IEI-Cityside's joint venture agreement to contain a provision "[s]pecifying the responsibilities of the parties with regard to negotiation of the contract, source of labor, and contract performance, including ways that the parties to the joint venture will ensure that the joint venture and the 8(a) partner(s) to the joint venture will meet the performance of work requirements set forth in paragraph (d) of this section" (which delineates the percentage of work that each joint venture partner must complete in the course of contract performance).

The IEI-Cityside joint venture agreement did not contain any of this specific information, with the exception of stating that IEI's President would negotiate the contract. Beyond that, as set forth above, the agreement stated only in very general and conclusory terms that IEI and Cityside would each perform fifty percent of the labor under the contract, and that IEI would have a right of first refusal as needed to meet the minimum work requirements set forth in the regulations. OHA reasonably concluded that these general statements were inadequate to meet regulatory requirements because the agreement "does not designate specific tasks or responsibilities to IEI and Cityside and fails to explain how [IEI-Cityside] will fulfill the performance of work requirements of 13 C.F.R. § 124.513(d)." AR 5075.

Notwithstanding the foregoing, IEI-Cityside argues that at the time it entered the agreement it could not have provided greater specificity with respect to facilities, equipment and

other resources, or as to the allocation of the parties' responsibilities with respect to contract performance. It contends that "[n]o specific 'itemization' of the equipment and facilities was possible at the time of proposal submission" because of the IDIQ nature of the procurement and because it did not know the geographic regions to which it would be assigned. Pl.'s Br. 10, 14; see Pl.'s Reply 6-11. Indeed, it argues, "the very language of the Solicitation itself provides for lengthy transition, during which the contract awardee is charged with the responsibility of furnishing the materials and facilities necessary for contract performance." Pl.'s Reply 8.

The SBA's conclusion that IEI-Cityside's "impossibility" argument was unavailing was reasonable for two independent reasons. First, as OHA observed, the regulations do not include an exception based on the nature of the procurement involved. See 13 C.F.R. § 124.513(c); Kisan-Pike, 2014 WL 6904349, at *9 (noting that the applicable regulations do not authorize an exception for situations where a joint venture may have difficulty providing detailed information). Indeed, carving out exceptions on this basis could undermine the SBA's purposes for imposing mandatory provisions on joint venture agreements and for requiring SBA approval of such agreements: to ensure that the 8(a) (or other small business) concern is bringing sufficient value to the joint venture relationship and that the relationship is genuine. See 13 C.F.R. § 124.513(a)(2) (providing that a "joint venture agreement is permissible only where an 8(a) concern lacks the necessary capacity to perform the contract on its own, and the agreement is fair and equitable and will be of substantial benefit to the 8(a) concern," but cautioning that "where SBA concludes that an 8(a) concern brings very little to the joint venture relationship in terms of resources and expertise other than its 8(a) status, SBA will not approve the joint venture arrangement"); see also 76 Fed. Reg. 8222 ("Receiving an exclusion from affiliation for any non-8(a) contract is a substantial benefit that only SBA-approved mentor/protégé relationships can receive. The intent behind the exclusion generally is to promote business development assistance to protégé firms from their mentors. Without [the requirements of section (c)], the entire small business contract could otherwise be performed by an otherwise large business.").

Second, and in any event, as OHA discerned, the fact that this matter involves an IDIQ contract and that IEI-Cityside did not know the geographic region to which it might be assigned did not preclude IEI-Cityside from providing more specificity regarding the equipment, facilities, and other resources that each party would contribute, or adequate information about allocations of responsibility. The "indefinite" aspect of this procurement was the number of properties that the contractor would manage. As OHA observed, notwithstanding this uncertainty about the number of properties or the geographic region for which the award would be made, IEI-Cityside "might nevertheless have complied with 13 C.F.R. § 124.513(c) and (d) by discussing the types of work each joint venture partner would perform, and the resources each partner would contribute, for each region awarded to Appellant." AR 5075.[5]

Indeed, the record in this matter reveals that IEI-Cityside could readily have provided additional specificity in its agreement. According to the administrative record, both IEI and

---

[5] It also bears noting that IEI-Cityside's complaint that specificity was impossible because it did not know in advance which of several geographic areas it might be awarded would apply to any procurement (IDIQ or not) in which an agency was awarding more than one contract in different geographic areas—a very common occurrence.

Cityside are incumbent HUD contractors with experience in performing field service management contracts. AR 383. IEI-Cityside emphasized in the past performance portion of its proposal that it is comprised of "two experienced HUD FSM contractors" and noted the tens of thousands of HUD properties its member entities have managed across multiple states. Id. IEI-Cityside also stated that "[a]s current FSM contractors, both Cityside and IEI have the infrastructure and personnel that can be assigned to the joint venture to perform the services required in areas 1D, 4D, 5D, 1P, 3P, 4P, 5P." Id. IEI-Cityside elaborated that "IEI currently has an active pool of subcontractors in area 1P. Cityside currently maintains a pool of subcontractors in area[s] 1P, 3P, 4P and 5P." Id. IEI-Cityside then went on to explain its plans for acquiring additional infrastructure based on its extensive experience, culminating in its assertion that "[i]f it is awarded the FSM 3.8 contract IEI-Cityside JV will be ready to perform from day one and will not require a lengthy transition period." AR 383; But cf. Pl.'s Br. 11, 14 (claiming that the transition period establishes impossibility of complying with regulations). Given these representations, and each of the joint partners' experience, IEI-Cityside necessarily would have had a much greater appreciation of what each partner would be contributing in terms of equipment, facilities, labor and other resources at the time it entered its agreement.

IEI-Cityside's impossibility claims are also contradicted by its technical proposal, in which IEI-Cityside asserted that "the Firm has existing fully staffed and equipped offices located within the Denver and Philadelphia HOC geographic area" aswell as overarching computer systems for the contracts. AR 358. The technical proposal also included a lengthy "Property Management Work Flow," complete with detailed charts and narratives that specified the types of work that IEI-Cityside would perform if it were awarded the contracts. AR 360-77. IEI-Cityside claimed that its pre-existing resources and coverage "will allow the Firm to provide timely and efficient services to HUD from day one." AR 360.

In addition, in submitting the joint venture agreement to the SBA district office in Nebraska, IEI-Cityside provided additional information on a form checklist—not included in the agreement itself—stating that it had existing personnel, equipment, and "facilities already in use that will be used for this contract with several other offices ready to perform the contract." AR 1323. IEI-Cityside also provided "[a] breakdown of work tasks to be performed by each joint venturer." See AR 1326.

The record, in short, demonstrates that IEI-Cityside was capable of providing specifics that it did not include in the agreement. OHA fully considered this record, as well as IEI-Cityside's arguments. OHA's interpretation of SBA's regulations and the application of those regulations to the specific circumstances of this case is entitled to substantial deference. OHA provided a reasoned and logical explanation for why the Area Office determination did not constitute clear error. Accordingly, the SBA's decision that the joint venture agreement failed to meet the requirements of 13 C.F.R. § 124.513(c) and (d) was neither arbitrary, capricious, nor contrary to law.

## CONCLUSION

On the basis of the foregoing, the government's motion for judgment on the administrative record is **GRANTED** and the plaintiff's motion is **DENIED**. Pursuant to the

joint status report filed on August 24, 2015, ECF No. 27, the briefs filed in this matter shall be released as the public versions of those filings except for the exhibits filed as attachments to plaintiff's complaint (ECF No. 1) and motion for a preliminary injunction (ECF Nos. 2 and 3).

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge
